RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TIMOTHY JAMES NEILL, JR.,

                    *Petitioner-Appellant*,

    *v.*

UNITED STATES OF AMERICA,

                    *Respondent-Appellee*.

No. 18-5350

─────────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
Nos. 2:11-cr-00001-5; 2:14-cv-00013—Waverly D. Crenshaw, Jr., District Judge.

Decided and Filed:  September 5, 2019

Before:  DONALD, LARSEN, and NALBANDIAN, Circuit Judges

─────────────────

## COUNSEL

**ON BRIEF:**  Michael C. Holley, FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

BERNICE BOUIE DONALD, Circuit Judge.  In 2011, Timothy Neill, Jr. ("Neill") pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  He was sentenced to ninety-two months imprisonment, and on advice of counsel, he decided not to pursue an appeal.  Neill subsequently filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing, among other things, that he had received ineffective assistance of counsel in regard to his appellate strategy.  The district court denied his § 2255 motion and,

later, denied a motion for reconsideration of his ineffective assistance of counsel claim.  After denying the motion for reconsideration, however, the district court issued a certificate of appealability because reasonable jurists could disagree with its disposition of Neill's claim for ineffective assistance.  For the following reasons, we **AFFIRM**.

I.

Neill has a lengthy criminal record, including multiple felonies.  In 2010, he was on parole with the state of Tennessee, and in June of that year, he was photographed holding a semiautomatic rifle.  As part of a federal investigation into gun trafficking, authorities discovered the photograph.  On January 20, 2011, the state of Tennessee revoked his parole and took him into custody, imposing a sentence of more than forty-two months for the violation.

On March 2, 2011, based on the same photograph, he was indicted by federal agents for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Soon thereafter, he was transferred to federal custody and pleaded guilty on September 12, 2011.  His sentencing was delayed for reasons that are not pertinent here, but he was eventually scheduled to be sentenced on January 11, 2013, approximately twenty-two months later.  During the intervening period, he was transferred back to state custody for nine months so that he could "earn behavioral and program credits, which [could] shorten the length [of his sentence]."  Thus, he spent thirteen months in federal custody prior to being sentenced.

In preparation for Neill's federal sentencing, the probation office prepared a Presentence Investigation Report ("PSR").  According to the PSR, Neill had twenty-two criminal history points, establishing a criminal history category of VI, the highest category in the Sentencing Guidelines.  His base offense level was twenty-three, which led to a Guidelines sentence range of 92 to 115 months.

During his sentencing hearing, defense counsel Benjamin Perry lodged numerous objections, all of which were overruled.  The district court adopted the recommended findings in the PSR and sentenced Neill to ninety-two months imprisonment, to run consecutive to his state sentence for the parole violation.

Notably, in imposing the sentence, the judge stated,

As to the sentence in this case, given the dangerousness of the underlying conduct and the Criminal History Category VI, which is as high as you can get, the Court will be inclined to sentence toward the high end of the guideline, but the Court takes into account your efforts to change, your concerns about your daughter which [have] changed [you] a bit.

The Court also wants to remind you that if you continue to do as you are currently that you will likely receive 54 days of good time credits, which will take off more than 14 months of your sentence which would be [an] effective federal sentence of about 76 or 78 months. You will get credit for the time you have been in custody so you will get an additional reduction on that. So considering the net effect of the sentence imposed by the Court, I don't believe the sentence is greater than necessary.

Neill contends the court's statement was in error because the court assumed he would receive credit against his federal sentence for the time he spent in federal custody prior to being sentenced. However, because Neill received credit on his state sentence for those thirteen months, he could not receive credit on his federal sentence as well. *See* 18 U.S.C. § 3585(b). Thus, Neill's position is that the court intended to sentence him to ninety-two months minus the thirteen months he had already spent in federal custody. Perry did not object to the court's statements, and the court entered a final judgment four days later, on January 15, 2013.

After the sentencing hearing, Perry consulted with Neill in regard to Neill's appellate strategy. Perry advised Neill that his best chance on appeal was to challenge a factual finding that concerned the number of bullets the magazine in the gun could hold. But Perry informed Neill that factual findings were difficult to overturn on appeal and that, even if he were successful, a sentence of ninety-two months would likely be within his new Guidelines range.

As to the possible disadvantages of an appeal, Perry informed Neill that the PSR did not list two of Neill's previous felonies, one for prescription fraud and the other for identity theft. Perry cautioned Neill that the felonies could be found if his case were remanded, which could lead the court to vary to the higher end of the Guidelines range at a resentencing. Perry was also concerned that the district court would choose to run Neill's federal sentence consecutive to those from the undisclosed felonies, adding to the cumulative amount of time he would be imprisoned. Additionally, Perry advised Neill that the prescription-fraud felony could qualify

him as an Armed Career Criminal, which would subject him to a mandatory minimum fifteen-year sentence.  Finally, Perry did not inform Neill that he could, or should, challenge the court's alleged error that he would receive credit on his federal sentence for his time spent in federal custody prior to being sentenced.  Neill claims that he decided not to pursue an appeal based on Perry's advice.

After being paroled into federal custody in August 2013, Neill noted that he had not received credit against his federal sentence for his time spent in federal custody prior to being sentenced.  In October 2013, Neill filed a pro se motion under Federal Rule of Criminal Procedure 36, seeking to correct an error in the judgment so that he would receive that credit.  *See* Fed. R. Crim. P. 36 (allowing a court to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from an oversight or omission[]").  The court denied the motion without prejudice because Neill was represented by counsel, but counsel had not filed the motion.

Perry did not file a Rule 36 motion on Neill's behalf, though, because, around this time, Neill had also filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  In his motion, Neill alleged, among other things, that Perry had provided ineffective assistance based on his advice not to appeal.  Upon learning of Neill's ineffective-assistance claim, Perry was allowed to withdraw, and the court appointed Neill another public defender.

In July 2014, Neill's new attorney filed a motion under Federal Rule of Criminal Procedure 36 to amend or correct the judgment, arguing that there was an error because Neill did not receive credit on his federal sentence.[1]  The district court denied the Rule 36 motion, opining that "there was no clerical error or oversight.  The Judgment is consistent with the Court's oral pronouncement at the . . . sentencing hearing."

As for Neill's § 2255 motion, the district court held an evidentiary hearing on June 29, 2015.  At the hearing, Neill and Perry testified to the above-summarized facts.

---

[1]He also filed an amended § 2255 motion.

On January 13, 2017, the court denied Neill's § 2255 motion. Instead of entering a final judgment, the district court administratively closed the case because Neill had a claim that was dependent on the outcome of *Beckles v. United States*, 137 S. Ct. 886 (2017), which had not yet been published by the Supreme Court.

On January 23, 2018, after *Beckles* had been published, Neill moved the court to reopen his case and to reconsider his ineffective assistance of counsel claim.[2] The court granted the motion but, again, denied the ineffective assistance claim, holding that Perry had a valid trial strategy, even if he was mistaken about Neill possibly being sentenced as an Armed Career Criminal for the prescription-drug felony. The district court also found that Neill could show no prejudice because the sentencing judge had already denied Neill's argument that the judge had intended for Neill to receive thirteen months of credit on his federal sentence. This time, however, the court issued a certificate of appealability, finding that reasonable jurists could disagree whether Neill received ineffective assistance

> [b]ased on the sentencing judge's comments that Neill would be eligible for twenty-two months of pretrial detention credit, Neill's counsel's failure to object to those comments, and Neill's counsel's erroneous belief that the prescription fraud sentence could lead to Neill being classified as an Armed Career Criminal upon a possible remand after appeal[.]

On appeal, Neill argues Perry was ineffective because he did not adequately advise him of the advantages and disadvantages of appeal, and "[h]ad [Neill] been given accurate advice, there would . . . have been at least a reasonable probability that he would have appealed." Specifically, Neill submits three arguments. First, Neill alleges that Perry's advice was deficient because he did not inform Neill that Neill should have appealed based on the sentencing judge's statement that he would receive credit for his time spent in federal custody prior to being sentenced. Neill then asserts that Perry's concerns based on Neill being sentenced as an Armed Career Criminal and the risk of additional consecutive sentences were groundless and objectively unreasonable. Finally, Neill concedes that the judge could have imposed a longer sentence if he

---

[2]Chief Judge William J. Haynes, Jr. originally presided over both Neill's criminal case and his § 2255 motion. On September 16, 2016, however, Neill's criminal case was transferred to Chief Judge Waverly D. Crenshaw, Jr. On August 2, 2017, Neill's § 2255 motion was assigned to Judge Crenshaw, Jr. as well.

would have known about his additional criminal history, but Neill argues that is a "weak reason to refrain from appealing."

We begin by addressing the correct standard of review and then proceed to the merits of Neill's claims.

## II.

"We review *de novo* a district court's denial of a § 2255 motion, and examine a district court's factual findings for clear error." *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003) (citing *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003)). "Ineffective assistance of counsel claims are mixed questions of law and fact that are reviewed de novo." *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) (citing *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999)).

## A.

Neill's argument, put succinctly, is that Perry gave him objectively unreasonable advice, which, when accepted by Neill, deprived him of the opportunity to appeal. As in any ineffective assistance of counsel claim, we have two questions to answer: (1) whether Perry's advice was objectively unreasonable, and (2) if so, whether Neill was prejudiced such that he is entitled to relief. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Before we reach the merits of Neill's claims, however, we need to examine the more discrete issue of how *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), which applied *Strickland* to a case involving counsel's unconsented failure to file a notice of appeal, affects this case. Neill argues that this case fits comfortably under *Flores-Ortega*. We disagree.

In *Flores-Ortega*, the Supreme Court made two holdings. First, an attorney is *per se* ineffective if she disregards a defendant's express instructions to file an appeal. *Id.* Neill did not instruct Perry to file an appeal, so this holding does not apply.

Second, "[i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question [is] . . . whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. In this context, "consult" means to advise "the

defendant about the advantages and disadvantages of taking an appeal, and [to] mak[e] a reasonable effort to discover the defendant's wishes." *Id.* at 478. However, counsel only has a constitutional duty to consult when "a rational defendant would want to appeal . . ., or [when] . . . this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In all cases, though, "courts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential[.]'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689-90) (internal citations omitted).

It is undisputed that Perry consulted with Neill after sentencing, and Neill ultimately decided not to appeal. The first issue, then, is whether *Flores-Ortega* extends to a situation like this one, where a defendant expressly declines to appeal but alleges he based the decision on counsel's unreasonable advice. The government's position is no. It posits that, once we determine a consultation occurred, that ends the matter; a court may not look into the advice given during the consultation. Of course, this would foreclose all challenges like the one presented here. The government's argument derives from dicta in *Flores-Ortega*, where the Court opined,

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . . At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.

528 U.S. at 477. (citing *Jones* v. *Barnes*, 463 U.S. 745, 751 (1983)). The government contends that these two statements represent the exclusive reach of *Flores-Ortega*: either an attorney disregards his client's demand to file an appeal and is thus ineffective, or a client instructs his attorney not to file an appeal—regardless of what advice the attorney may have provided the client—and the client is forbidden from making an ineffective assistance of counsel claim.

We are skeptical of the government's argument. Its position seemingly invites precisely what the Supreme Court counseled against in both *Flores-Ortega* and *Strickland*—imposing a bright-line rule in an ineffective-assistance claim without looking to the particular facts of the case. *See Flores-Ortega*, 528 U.S. at 478 ("We reject this *per se* rule as inconsistent

with *Strickland'*s holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' The Court of Appeals failed to engage in the circumstance-specific reasonableness inquiry required by *Strickland*, and that alone mandates vacatur and remand."). Moreover, it seems that accepting the government's argument would mean licensing attorneys to give unreasonable advice at a critical stage in the proceedings, leaving the defendant with no recourse.[3] *Id.* at 483. It is difficult to see how *Strickland* and its progeny can support this argument. Nevertheless, we need not resolve this issue because this case hinges entirely on Neill's failure to show prejudice.

In *Flores-Ortega*, the Court held that it will presume prejudice in an ineffective assistance claim if a defendant can establish a reasonable probability "that, but for counsel's deficient performance, he would have appealed." *Id.* at 471, 484. The Court did not require a showing of actual prejudice—in other words, that the defendant would have *prevailed* on appeal—because "the denial of [an] entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice." *Id.* at 483.

Neill's claim presents precisely this issue. Therefore, as instructed by *Flores-Ortega*, we will presume prejudice if Neill can establish that, but for Perry's allegedly deficient advice, there is a reasonable probability he would have appealed.

With the proper legal standards in mind, we analyze the merits of Neill's claims.

---

[3]We pause here to briefly address the government's contention that prior Sixth Circuit precedent supports its position. The government cites six cases, but all are distinguishable based on the key dispute here. In none of those cases did we address an allegation that counsel's objectively unreasonable advice caused the defendant to forego an appeal. *See Galvin-Garcia v. United States*, 591 F. App'x 463, 464 (6th Cir. 2015); *United States v. Doyle*, 631 F.3d 815, 818 (6th Cir. 2011); *Higbee v. United States*, 20 F. App'x 465, 466 (6th Cir. 2011); *Shelton v. United States*, 378 F. App'x 536, 539 (6th Cir. 2010); *Regalado v. United States*, 334 F.3d 520, 526 (6th Cir. 2003); *Spence v. United States*, 68 F. App'x 669, 671 (6th Cir. 2003). Therefore, they are inapposite. The government does, however, cite one unreported case from the Eleventh Circuit that declined to look into the adequacy of counsel's consultation. *See Stephen v. United States*, 706 F. App'x 954 (11th Cir. 2017) (per curiam). Simply put, we disagree. There, the Eleventh Circuit chose not to not look into the particular facts of the case and, instead, imposed precisely the type of bright-line rule that the Supreme Court has warned against.

B.

Neill cannot prevail because, even if we assume that Perry provided deficient advice, Neill has not established a reasonable probability that he would have appealed had he received competent advice from Perry.

In determining whether a defendant has demonstrated that he would have taken an appeal had he not received unreasonable advice, we must consider several factors specific to that defendant, including the likelihood of success in the appeal, the potential consequences the defendant would have faced had he pursued the appeal, and any underlying evidence of the defendant's state of mind at the time he decided not to appeal. *See Lee v. United States*, 137 S. Ct. 1958, 1965-69 (2017). For instance, in *Lee*, a legal permanent resident from South Korea was charged with a crime that subjected him to mandatory deportation if convicted. *Id.* at 1962-63. Lee's counsel, when advising him of the potential consequences of accepting a plea agreement, incorrectly assured him that he would not be deported following a conviction—a fact that was of "paramount importance" to Lee and that was the "determinative issue" in his deciding whether to accept a plea. *Id.* at 1967–68. Indeed, during the plea colloquy, the district court asked Lee if the fact that his plea could result in his deportation affected his decision, and Lee responded with "Yes, Your Honor," before his counsel took him aside and told Lee that it was simply a "standard warning." *Id.* at 1968. After learning that he was going to be deported as a result of his conviction, Lee filed a § 2255 petition, arguing that he would have rather gone to trial and fought the charge to avoid deportation, even though "his prospects of acquittal at trial were grim." *See id* at 1963, 65. Taking all of the evidence into account, the Supreme Court granted relief, finding that, in Lee's specific case, he demonstrated that he would have risked a trial had he been correctly informed of the immigration consequences of a conviction. *Id.* at 1968-69.

In this case, Neill has not demonstrated that he would have appealed his sentence had he been given competent advice. To begin, there is nothing in the record that suggests Neill wished to appeal for any reason other than the possibility of receiving a shortened sentence. Therefore, the predominant factor in our analysis is the likelihood (as it would have appeared to Neill at the time he took his appeal decision) that he would have been better off had he appealed. *Lee*, 137

S. Ct. at 1965-66.  He almost certainly would not have been better off.  The thrust of Neill's argument is that his actual sentence did not reflect what the sentencing judge intended to impose.  However, in ruling on the Federal Rule of Civil Procedure 36 motion, the sentencing judge expressly affirmed that the judgment reflected the court's intended sentence.  Thus, if Neill had pursued this claim on appeal, his likelihood of success would have been, at best, questionable.  Further, and more pertinently, even if Neill were to succeed on this claim now, the record shows that there is a strong chance he would receive a lengthier—not shorter—sentence on remand.  Neill admits that the PSR did not capture two additional felonies he had committed, and the sentencing judge specifically stated that he would generally sentence someone at Neill's criminal history category closer to the top-end of the Guidelines range.

Neill's only response is that the sentencing judge would want to be consistent, and a harsher sentence would be presumed vindictive.  In so arguing, he overlooks that a presumption of vindictiveness for imposing a lengthier sentence following a successful appeal may be overcome with "objective information in the record justifying the increased sentence[,]" such as "any conduct or event coming to the judge's attention after the first sentencing that may throw new light upon the defendant's life, health, habits, conduct, and mental and moral propensities." *United States v. Russ*, 600 F. App'x 438, 444 (6th Cir. 2015) (citations and internal quotations marks omitted).  Additional felonies that were not previously reported in Neill's PSR fall squarely within that type of information.[4]  Accordingly, not only is Neill's likelihood of success on appeal quite low, but even if he were to succeed on appeal, he also would have likely faced a *harsher* sentence than he originally received.  These are strong indicators that Neill would not have appealed had his counsel given him accurate information.

The only evidence tending to show that Neill would have pursued an appeal, even with these odds stacked against him, is his own testimony provided during the evidentiary hearing on his § 2255 motion.  There, very simply, he said he would have pursued an appeal had his counsel given him correct information.  We do not find this evidence persuasive.  First, the district court

---

[4]Additionally, when two different judges preside over the original sentencing and the resentencing, as would be the case here, there is no presumption of vindictiveness absent special circumstances.  *See Goodell v. Williams*, 643 F.3d 490, 499 (6th Cir. 2011).

appears to have found Neill's statement to be incredible.  *See* R.E. 76-1, PageID #378 ("Based upon the testimony and evidence presented at the evidentiary hearing, Movant fails to show any factual or legal basis that Movant's counsel's performance was deficient in any way or that Movant suffered any prejudice from his counsel's performance.").  Second, the Supreme Court has admonished us that, rather than relying solely on "*post hoc* assertions from a defendant" about what he would have done, we must "look to contemporaneous evidence to substantiate a defendant's expressed preferences[,]" *Lee*, 137 S. Ct. 1958, 1967 (2017), and as described above, the contemporaneous evidence in this case does not substantiate Neill's testimony at his evidentiary hearing.

Accordingly, we find Neill has not demonstrated a reasonable probability that he would have appealed after he was sentenced had he received competent counsel.

III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.