NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0081n.06

Case No. 21-5733

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| AWEIS HAJI-MOHAMED, | ) | **FILED** |
| Petitioner-Appellant, | ) | Feb 26, 2024 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| UNITED STATES OF AMERICA, | ) | |
| Respondent-Appellee. | ) | AMENDED OPINION |
|  | ) | |

Before: BATCHELDER, BUSH, and DAVIS, Circuit Judges

STEPHANIE DAWKINS DAVIS, Circuit Judge. Petitioner Aweis Haji-Mohamed is a federal prisoner who seeks to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 for two offenses involving the illegal use of firearms. This appeal revolves around a singular mistake that carried through from Haji-Mohamed's guilty plea to his sentencing. Specifically, at his plea hearing, the district court informed Haji-Mohamed, and his plea documents reflected, that he faced a statutory mandatory minimum sentence of 35 years' imprisonment. But this information was wrong. His correctly calculated statutory-minimum sentence was 32 years. Haji-Mohamed pleaded guilty to two of the nineteen counts brought against him after reaching a plea agreement with the government that called for a sentence of 35 years' imprisonment. Consistent with the plea agreement, he received a sentence of 35 years. Haji-Mohamed now claims his attorney was ineffective in failing to (1) raise the minimum-sentence-calculation error during

an earlier motion to withdraw his guilty plea and (2) advise him that the error provided meritorious grounds for appeal. He also insists that his guilty plea was rendered involuntary and unintelligent due to the mistaken information he received about the mandatory-minimum sentence. Because Haji-Mohamed cannot demonstrate the requisite prejudice to sustain his claims and he has procedurally defaulted on the latter claim, he cannot meet his burden for collateral relief. We therefore affirm the decision of the district court.

I.

In the early months of 2015, Haji-Mohamed was involved in a series of criminal episodes in and around two public housing developments in Nashville, Tennessee that ultimately led to charges against him in both state and federal court. In particular, Haji-Mohamed and his confederates perpetrated several armed robberies against individuals and at least one area business, brandishing and in more than one instance, firing pistols during the course of these activities. Things came to a head when local law enforcement arrested Haji-Mohamed for the murder of Isaiah Starks in 2015. A federal grand jury handed down indictments against Haji-Mohamed and others for offenses ranging from robbery and conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, *et seq*., to a variety of firearm offenses. Altogether, Haji-Mohamed faced nineteen federal felony charges as well as a first-degree murder charge for Starks's death in Tennessee state court.

Following global plea negotiations to resolve both the federal and state charges against him, Haji-Mohamed pleaded guilty to Counts 8 and 13 of the federal indictment. These two counts charged him with discharging a firearm during and in relation to a crime of violence and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and (ii) respectively. At the plea hearing, the parties submitted a plea petition

and a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) ("C-Plea").[1] The documents correctly identified the maximum sentence as imprisonment for life for both counts, but they each contained incorrect information about Haji-Mohamed's statutory minimum sentence. Specifically, they recited his statutory mandatory-minimum sentence as 10 years for the discharging count and a consecutive 25 years for the brandishing count—for a total of 35 years.

But, as this court explained in *United States v. Washington*, 714 F.3d 962, 970 (6th Cir. 2013), the rule of lenity applies such that when a defendant faces multiple § 924(c) counts in a single indictment, the count carrying the lowest minimum sentence should be counted first for purposes of administering consecutive penalties. Applying this rule of ordering to Haji-Mohamed's two counts means that the brandishing count, which carried a minimum sentence of 7 years for a first offense, must come before the discharge count, which carried a minimum of 10 years when counted first.[2] When listed second in the ordering, either count (brandishing or discharging) would then carry a consecutive mandatory-minimum term of 25 years. Hence, the total mandatory-minimum sentence was 32 years—three years less than the agreed-to-term stated in the plea documents. This erroneous calculation was repeated during the plea hearing when the district court informed Haji-Mohamed that the statutory mandatory minimum for the discharge count was "at least ten years" and that the penalty for the brandishing count was "a mandatory [minimum] consecutive imprisonment of at least 25 years." (R. 624, PageID 2299, 2300).

While the implications of *Washington* went undetected, the potential effect of relatively contemporaneous statutory changes did not. After Haji-Mohamed's guilty plea, but before his

---

[1] Under a C-Plea, if the court accepts the parties' agreed-upon sentencing range or specific term of years, then it retains no discretion to depart from the agreed amount.

[2] The minimum sentences here refer to the state of the law at the time Haji-Mohamed committed the charged offenses and pleaded guilty. *See* 18 U.S.C. § 924(c) (2016).

sentencing, Congress passed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which, if applied, would have reduced the mandatory-minimum sentence for the two offenses to which Haji-Mohamed pleaded guilty to 17 years. He filed a motion to withdraw the guilty plea for this reason. The district court held a hearing on the motion, but Haji-Mohamed did not raise the so-called *Washington* error during the hearing. Haji-Mohamed testified at the hearing that he accepted the plea agreement for 35 years because it was his mandatory minimum. He argued that he would not have pleaded guilty and accepted a 35-year sentence if the mandatory minimum was only 17 years. The district court denied the motion and later sentenced him to 35 years imprisonment in accordance with his C-Plea. He did not file a direct appeal.

Haji-Mohamed later filed the instant petition to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that the district court's failure to advise him of the correct minimum sentence violated Fed. R. Crim. P. 11 (b)(1)(I), thus rendering his plea unintelligent and involuntary, and that his trial counsel was ineffective both in his handling of the motion to withdraw his guilty plea and in failing to properly advise him about the decision to appeal. The district court did not hold an evidentiary hearing on the petition. Instead, it considered the following: declarations from Haji-Mohamed and his trial counsel, David Komisar, filed by the parties with their briefing; the plea colloquy; testimony from the evidentiary hearing on the motion to withdraw his guilty plea; and other evidence in the record.

After considering the evidence, the district court concluded that the 35-year agreed-upon sentence was not based on the mandatory minimum. It credited the government's evidence that the parties negotiated an agreement as to the total term of years and then chose the counts to which Haji-Mohamed would plead guilty to match that term of years. The district court also concluded that Haji-Mohamed's lawyer was not ineffective by failing to recognize and raise the minimum-

sentence error in the context of his motion to withdraw his plea. More specifically, the district court found that Haji-Mohamed could not demonstrate the requisite prejudice required under *Strickland v. Washington*, 466 U.S. 668 (1984), because he agreed to serve a term of 35 years under his plea agreement, not to serve whatever the mandatory minimum turned out to be for the charges to which he pleaded guilty. Finally, the court concluded that the failure to raise *United States v. Washington* did not meet the benchmark for ineffectiveness under *Strickland* because the case was not directly applicable given the nature of C-Pleas. As such, the district court concluded it was unreasonable to expect counsel to have raised *Washington*, which established a rule "that applied in an entirely different context." This appeal followed.

## II.

Ineffective-assistance-of-counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). We "review the denial of a § 2255 motion de novo," including the resolution of "claims of ineffective assistance of counsel, which are mixed questions of law and fact." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020) (quotation and brackets omitted). We "review the district court's factual findings for clear error." *Id.* The court may address *Strickland*'s prongs in any order and need not address both prongs "if [the movant] makes an insufficient showing on one." *Id.* at 255 (quoting *Strickland*, 466 U.S. at 697).

## III.

*Ineffective Assistance of Counsel.* Haji-Mohamed maintains that his trial lawyer was ineffective in failing to recognize and assert, as additional grounds to support his motion to withdraw the guilty plea, that the district court's incorrect advice as to the mandatory-minimum

sentence was an error under Rule 11 that rendered his plea involuntary and unintelligent. He also argues that counsel was ineffective in failing to advise him to file a direct appeal on this issue.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland*, 466 U.S. at 687. To succeed on a claim that trial counsel was ineffective under *Strickland*, a petitioner must affirmatively prove both that the attorney's performance was deficient and that petitioner was prejudiced as a result. *Id.* As to deficient performance, the proper inquiry is whether counsel's representation sank to the level of "incompetence under 'prevailing professional norms,'" as opposed to whether counsel simply departed from best, or even common practice. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). And as to prejudice, the court must determine if the petitioner has demonstrated a substantial likelihood of a different outcome were it not for counsel's deficiencies. *Id.* at 112. Applying these standards, we consider Haji-Mohamed's claims in turn.

A.   The Motion to Withdraw the Guilty Plea

The general rule is that "failure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003) (citing *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001)). Where a petitioner alleges that his counsel failed to provide such guidance, in particular, that counsel was ineffective in litigating his motion to withdraw a guilty plea, we have found that applying *Strickland* requires a petitioner to show "a reasonable probability that the district court would have granted [the] motion." *United States v. Wynn*, 663 F.3d 847, 852 (6th Cir. 2011).

To withdraw a guilty plea post-acceptance by a district court, a defendant must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). And while "a district court's failure to correctly provide the defendant with all the information required by Rule 11 may constitute a 'fair and just reason' to request the withdrawal of a guilty plea[,]" *United States v. Freeman*, 17 F.4th 255, 262 (2d Cir. 2021), on direct appeal, a Rule 11 violation would not amount to a "fair and just reason" to withdraw a guilty plea when it had no impact on the defendant's decision to plead guilty, *United States v. Hogg*, 723 F.3d 730, 752 (6th Cir. 2013). *See id.* at 744 (noting that in the context of a motion to withdraw a guilty plea, "we [] must consider whether this Rule 11 violation was harmless" under Rule 11(h)); *see also United States v. Vonn*, 535 U.S. 55, 72, n.9 (2002) (recognizing that appellate courts "have held that a Rule 11 violation that is harmless under Rule 11(h) does not rise to the level of a 'fair and just reason' for withdrawing a guilty plea") (collecting cases).

As explained in *Hogg*, where the Rule 11 violation was not raised in the district court, as is the case here, rather than conducting a harmless error inquiry (i.e., whether the error had a substantial impact on his rights), plain error review would apply. *Hogg*, 723 F.3d at 737; *see also Williams v. United States*, 47 F. App'x 363, 365–66, 368–69 (6th Cir. Sept. 25, 2002) (applying plain error review and finding no error where the district court stated the incorrect mandatory minimum sentence because the defendant's PSR accurately disclosed the correct minimum sentence and the defendant failed to object to this portion of the report). The plain error standard means, among other things, that a defendant "'must show a reasonable probability that, but for the error, he would not have entered the plea.'" *Hogg*, 723 F.3d at 737 (quoting *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004)). So how do these review standards interact with our inquiry on collateral review—considering that claims for ineffective assistance of counsel should

most frequently be brought through a § 2255 motion instead of a direct appeal? Ignoring this wrinkle would unjustifiably permit defendants to circumvent plain error analysis when we weigh prejudice on collateral review. Thus, for purposes of showing prejudice under *Stickland*, in considering whether there is a reasonable probability that Haji-Mohamed would have prevailed on a motion to withdraw his plea based on a Rule 11 error, we may consider whether there is a reasonable probability that the Rule 11 error caused his decision to plead guilty. *Cf. Ward v. Jenkins*, 613 F.3d 692, 699 (7th Cir. 2010) (ineffectiveness claim on collateral review holding that, "[t]o demonstrate prejudice, [Petitioner] would have to show that (1) there was a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial and (2) there was a reasonable probability that the court would have granted his motion to withdraw his guilty plea.")

*Deficiency of Counsel.* The district court found that trial counsel's failure to identify and raise the mandatory-minimum error was not objectively deficient because *Washington* was not directly applicable and the Sixth Amendment did not require counsel to be a "lexicon of all published cases," or at least not those that establish a rule that applies in a different context. (R. 20, PageID.159). But the statute of conviction, not just *Washington*, provides the source of the Rule 11 error. Section 924(c)(1)(A)(ii) expressly provides a mandatory-minimum sentence of seven years for "brandishing" a firearm and § 924(c)(1)(A)(iii) sets forth a mandatory-minimum sentence of 10 years for "discharging" a firearm. Moreover, Rule 11(b)(1)(I) imposed an obligation on the district court to inform the defendant of any mandatory minimum penalty. FED. R. CRIM. P. 11(b)(1)(I). Consequently, the "ordering" of offenses for sentencing discussed in *Washington* is not the entirety of the issue. Rather, the question is whether counsel's failure to identify and raise the error made by the court under Rule 11—to inform Haji-Mohamed that the

mandatory minimum for a § 924(c)(1)(A)(ii) brandishing offense is only seven years and then mis-ordering the offenses to reach the incorrect total of 35 years—constitutes objectively deficient performance.

Notably, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Hence, counsel has a duty either to conduct a reasonable investigation or to make a reasonable decision that renders a particular investigation unnecessary. *Id*. Despite misgivings about the wisdom of such action, Komisar decided to move forward with a motion to withdraw Haji-Mohamed's guilty plea based on changes made by the Fair Sentencing Act. He did not pursue withdrawal based on the Rule 11 error.

Here, Komisar simply says that he did not realize that the mandatory minimum for the two counts was 32 years and that even if he had, the parties would have reworked the plea agreement to get to 35 years. Thus, he did not take additional steps to apprise himself of the applicable mandatory minimum and forged ahead with advising his client without that information in hand. It is therefore hard to say that his failure to advise Haji-Mohamed to pursue the Rule 11 violation as part of his motion to withdraw his guilty plea was a conscious decision. To be sure, such circumstances raise serious questions about whether counsel's failure is objectively deficient. *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) ("A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available."); *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable

performance under *Strickland*."); *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring) ("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis."). Yet, counsel's overall plea negotiation strategy to reach a global agreement for a term of years that would encompass all charges stemming from Haji-Mohamed's then-pending state and federal charges—irrespective of the mandatory minimum sentence—is hard to second-guess or label objectively unreasonable. In the end, we need not conclude one way or the other on this aspect of counsel's performance because Haji-Mohamed's claim fails on the prejudice prong regardless.

*Prejudice.* On the question of prejudice, we ask but for counsel's Rule 11 error, whether Haji-Mohamed could show a reasonable probability that he would have prevailed on his motion to withdraw his guilty plea under the "fair and just" standard. That standard requires a showing that the misstated mandatory minimum formed the basis for his decision to enter a guilty plea. While Haji-Mohamed declares that he would have declined to plead guilty had he known of the 32-year mandatory minimum, he notably stops short of stating that he would have gone to trial. Enhancing his bargaining position may explain this equivocation. The district court aptly observed that by the time Haji-Mohamed moved to withdraw his guilty plea, the bargaining landscape had shifted: his co-defendant had been acquitted of the Cricket store robbery and a primary witness to the murder charge had died. Thus, "buyer's remorse" was more than a passing theory for his motivation.

True, Haji-Mohamed sought to withdraw his guilty plea upon passage of the Fair Sentencing Act when his mandatory-minimum sentence was potentially cut in half. But this fact, reflecting his subjective judgment in a different, though similar context, even considered together with Haji-Mohamed's declaration is not enough. Like his testimony at the hearing on his motion

to withdraw his guilty plea, Haji-Mohamed's declaration supporting his § 2255 petition states that if he had known the aggregate mandatory-minimum sentence was only 32 instead of 35 years, he would not have pleaded guilty. But this is seemingly in tension with his own admission that he decided to plead guilty and to accept the plea bargain "mainly" because he thought there was a substantial chance that he would be convicted of one of the robbery counts involving the Cricket mobile phone store and one of the other (dismissed) § 924(c) counts. Considering this fact, his further point that he disagreed with Komisar on the strength of the state murder charge does not seem meaningful to the question of whether he would have withdrawn his guilty plea.

For his part, Komisar explained in his declaration that he believed (if Haji-Mohamed did not plead guilty) there was a high probability that Haji-Mohamed would be convicted of the state murder charge given the number of witnesses to that crime, and that he would likely face 51 years in state prison before he would be eligible for parole. According to Komisar, the 51-year number drove the plea process; he told the government's attorney that any plea agreement must include the murder charge. During negotiations, the government first offered a global plea deal of 40 years' imprisonment; Komisar countered with 30 years; and they settled on 35 years. Komisar explained that while Haji-Mohamed was unhappy with the offer, he ultimately seemed to appreciate that a global agreement to 35 years was better than a potential 51-year state penalty plus whatever the federal sentence turned out to be if he did not accept the plea offer. Komisar declared that it did not matter how the parties arrived at 35 years as far as the combination of counts. Picking counts "was simply a device to get to the agreed number of 35 years."

The district court found that Haji-Mohamed's statement that the misstated mandatory minimum motivated his acceptance of the plea offer was not credible. The court based its finding on Haji-Mohamed's prior testimony—including the court's recollection of his demeanor while

testifying, and the evidence in the record showing that the 35 years was driven by factors other than the mandatory minimum. We have previously held that "[i]n the absence of a clear basis in the record for rejecting the district court's credibility determinations, we are bound by those determinations." *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005). Indeed, "[f]indings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." *Id.* (quoting *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (en banc)). And we see no clear basis for rejection here. There is no reason to believe that learning the correct mandatory minimum was 32 years rather than 35 years would have motivated him to proceed to trial rather than to remove the "substantial chance" of conviction on the counts he referenced in his declaration.

Moreover, the additional evidence in the record supports the district court's conclusion that Haji-Mohamed did not suffer the requisite prejudice to sustain his claim. In particular, while Haji-Mohamed now says that he was less concerned about the state murder charge, it loomed large over the plea negotiations—so much so that Komisar insisted that the government coordinate its offer with the state prosecutor overseeing the murder case. And tellingly, the parties agreed to the number of years acceptable to both sides *before* settling on which of Haji-Mohamed's 19 counts would be the subjects of the guilty plea. Further, the agreement disposed of 17 other federal counts that were serious felonies. And while Haji-Mohamed expressed frustration about the rapidly-approaching trial date, he ultimately praised the result, stating during the plea hearing, "Mr. Komisar even—regardless of our differences, he's able to still give me this 35." (Case No. 15-cr-00088, R.624, PageID.2306, 2310). Later in the plea colloquy, he confirmed that he was giving up "the right to a trial and all of the defense strategy that [he] could produce and—and could be made on [his] behalf at trial[]." (*Id.* at 2313). Thus, on balance, the contemporaneous evidence of

Haji-Mohamed's preference to plead guilty rather than go to trial undermines his claim to the contrary. *See Lee v. United States*, 582 U.S. 357, 369 (2017) (explaining that guilty pleas should not be upset merely based on a defendant's post hoc assertions that he would not have pleaded guilty but for counsel's errors. Instead, judges should "look to contemporaneous evidence to substantiate a defendant's expressed preferences."). As a result, he cannot demonstrate a substantial likelihood of a different result and cannot satisfy *Strickland*'s standard for prejudice.

B.      Failure to Appeal

With respect to Haji-Mohamed's argument that counsel was ineffective because he failed to advise him to file a direct appeal raising the Rule 11/voluntariness error, we conclude that this argument fails for reasons largely similar to those discussed above.

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question [is] . . . whether counsel in fact consulted with the defendant about an appeal." *Neill v. United States*, 937 F.3d 671, 676 (6th Cir. 2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)). In this context, "consult" means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [to] mak[e] a reasonable effort to discover the defendant's wishes." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 478). However, counsel only has a constitutional duty to consult when "a rational defendant would want to appeal" or when "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). In all cases, "courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 477) (internal quotation marks omitted).

We observed in *Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020), that "defense lawyers need not (and in fact should not) raise every colorable argument they can find." (citing *Davila v. Davis*, 582 U.S. 521, 533 (2017) ("Effective appellate counsel should not raise every nonfrivolous argument[.]"); *Wilson v. McMacken*, 786 F.2d 216, 219 n.3 (6th Cir. 1986) (trial counsel need not make "every colorable objection"). This is because difficult decisions about which issues to pursue and which ones to cast aside lie at the heart of legal advocacy. A lawyer's decision on such issues is deficient only when no reasonable attorney would have made the same call at the time. *See Strickland*, 466 U.S. at 690.

There is no debate that Komisar consulted with Haji-Mohamed about a potential appeal. Thus, the question before the court is not whether the duty to consult was triggered, but whether the consultation itself passes constitutional muster. Komisar's declaration reflects discussions about appealing and the risk that an appeal could void the plea agreement. The government argues that Komisar provided competent, candid advice, despite failing to mention the Rule 11 error with Haji-Mohamed. The government also points out that raising the Rule 11 error on appeal would have carried risks similar to or the same as those attendant to the other issues Komisar did discuss with Haji-Mohamed. Still, Komisar's declaration does not suggest that he discussed the Rule 11 error and the advantages and disadvantages of pursuing an appeal on that issue with Haji-Mohamed, or that he discerned whether Haji-Mohamed wanted to appeal the issue.

We presume prejudice in an ineffective-assistance claim if a defendant can establish a reasonable probability "that, but for counsel's deficient performance, he would have appealed." *Flores-Ortega* at 471, 484; *see also Garza v. Idaho*, — U.S. —, 139 S. Ct. 738, 742 (2019) (prejudice is presumed when an attorney's deficient performance causes a defendant to forgo an appeal that he otherwise would have pursued, even if he has signed an appeal waiver). This is

where Haji-Mohamed's claim once again falters. Neither in the district court nor on appeal does Haji-Mohamed point to any evidence in the record suggesting that he would have pursued an appeal if counsel had advised him that the Rule 11 error provided a meritorious ground for doing so. Not even Haji-Mohamed's self-serving declaration in support of his petition makes this claim.[3] Moreover, he agreed with Komisar's advice to forgo any appeal of the court's denial of his motion to withdraw his guilty plea because he agreed that the risk of resurrecting the murder charge was too great. The same danger existed were he to successfully challenge his guilty plea. As such, we do not presume prejudice here and Haji-Mohamed has not otherwise met his burden to establish its existence. Therefore, he is not entitled to relief.

*Lack of Evidentiary Hearing.* Haji-Mohamed resists this conclusion, arguing that at minimum, the district court was obligated to conduct a hearing on his claims. Section 2255 requires "a hearing on such allegations unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (internal quotation marks omitted); *Ray v. United States*, 721 F.3d 758, 760–61 (6th Cir. 2013). "Stated another way, the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008). The decision of whether to hold an evidentiary hearing is one committed to the sound discretion of the district court. *Huff v. United States*, 734 F.3d 600,

---

[3] Notably, the presentence report, which Haji-Mohamed reviewed before sentencing, correctly identified the mandatory minimum for the brandishing count as seven years. He did not question this fact. The parties do not address the extent to which this notice may have factored into the decision-making process; we highlight it here for further context.

607 (6th Cir. 2013) ("A decision not to hold an evidentiary hearing on a motion for relief under 28 U.S.C. § 2255 is reviewed for abuse of discretion.").

Here, the district court made a credibility finding that Haji-Mohamed's claim that the stated mandatory minimum motivated his acceptance of the plea offer was not believable. For reasons previously discussed, we are loath to question this finding. While the district court's credibility determination does not necessarily mean that Haji-Mohamed's statement is "inherently unreliable," coupling it with his declaration accompanying his petition demonstrates an internal inconsistency that contradicts the record. Specifically, as we noted earlier, Haji-Mohamed states in his declaration that he mainly agreed to plead guilty to avoid possible convictions for the Cricket store robbery and another 924(c) count—not because 35 years was the lowest statutory sentence. Irrespective of the evidence offered by the government, therefore, his own account of the foremost motivating factor for his guilty plea is untethered from the error that he claims justifies relief. Consequently, even with the relatively light burden placed on petitioners to justify a hearing, he has failed to carry it and the district court did not abuse its discretion in declining to hold a hearing for his claims.

*Voluntariness of Guilty Plea.* In addition to his ineffective-assistance-of-counsel claims, Haji-Mohamed also makes the independent argument that his guilty plea was constitutionally infirm because it was not voluntary and intelligent and thus violated due process. But Haji-Mohamed did not raise the claim that his plea was unintelligent and involuntary at or before sentencing. Nor, as we have discussed, did he file a direct appeal. Instead, he raised it for the first time in his § 2255 motion. Generally, when a defendant fails to raise an issue on direct appeal, other than ineffective assistance of counsel, that issue is waived and cannot be pursued on collateral review absent a showing of cause and prejudice. *See Huff*, 734 F.3d at 605–06. The hurdle for

such a double default is intentionally high in view of the federal interest in the finality of criminal convictions. *See United States v. Frady*, 456 U.S. 152 (1982). Indeed, "the concern with finality served by limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). And the Court has not hesitated to apply this standard to cases involving claims of unintelligent and involuntary guilty pleas. *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 622 (1998).

The government may, however, forfeit its right to assert default as a defense by failing to raise it. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). The government has not asserted default in this case. And the district court did not consider its application. Even so, we may raise the issue *sua sponte* where appropriate. *Id.* We acknowledge that ineffective assistance of counsel can provide sufficient cause to excuse a petitioner's failure to raise an issue in the district court or on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (stating that procedural default resulting from ineffective assistance of counsel must be imputed to the state). Nevertheless, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 487. Thus, under the facts that Haji-Mohamed has alleged—that counsel missed the involuntary/unintelligent-plea issue in the district court and in considering grounds for appeal—he has not established sufficient cause to excuse the procedural default.

Moreover, having failed to demonstrate prejudice sufficient to sustain his ineffective-assistance-of-counsel claims, he necessarily cannot establish the actual prejudice required to overcome his procedural default. Under such circumstances, where we have thoroughly explored petitioner's posited reason for failing to raise his involuntary/unintelligent-plea claim, we find that

additional briefing is not necessary and *sua sponte* consideration is appropriate. We thus decline further review on the merits of this claim.

IV.

*Request for Remand.* Finally, Haji-Mohamed argues that if this matter is remanded, a different district judge should be assigned. His request is motivated by the fact that the district court made an adverse credibility finding against him. We have accepted the district court's credibility finding and otherwise found that Haji-Mohamed is not entitled to relief. Therefore, there will be no remand and his request is denied as moot.

V.

For the reasons set forth above, the decision of the district court is AFFIRMED.